This declaratory judgment action arose from a dispute over an insurance agreement between Jackson County Hospital (the "Hospital") and its insurer, Alabama Hospital Association Trust (the "Trust"). This Court has considered an earlier appeal in this action; see Jackson County Hosp. v. Ala. Hosp. Ass'nTrust, 619 So.2d 1369 (Ala. 1993) ("Jackson I").
Two former employees of the Hospital, Gerri Adkins and Alice Webb, sued the Hospital; Adkins alleged that the Hospital had wrongfully terminated her employment in retaliation for her filing a workers' compensation claim, and both Adkins and Webb alleged that the Hospital had sexually discriminated against them. The Trust refused to provide the Hospital with insurance coverage for Adkins and Webb's claims; it then brought a declaratory judgment action to determine whether it was obligated to provide coverage under the Hospital/Trust insurance agreement. The trial court entered a summary judgment in favor of the Trust, holding that the Trust was not required to cover the claims. See Jackson I, supra.
In Jackson I, this Court affirmed the summary judgment as to the sexual discrimination claims filed by Adkins and Webb. The Court determined that the Trust had no duty to defend the Hospital, because, it held, the sexual discrimination claims resulted from intentional acts that were not covered by the "occurrence" provisions of the Hospital/Trust insurance agreement. However, the Court reversed the summary judgment as to Adkins's wrongful termination claim and remanded the cause for further proceedings. The Court held that the wrongful termination claim did not arise under the workers' compensation law for purposes of a policy provision excluding coverage for actions stemming from workers' compensation disputes.
After this Court issued its opinion in Jackson I, Adkins and the Hospital settled her wrongful termination claim. The Hospital sought coverage from the Trust for the settlement amount. On remand, the trial court again entered a summary judgment for the Trust on Adkins's wrongful termination claim. Citing the Jackson I holding as to the sexual discrimination claims, the trial court concluded that the Hospital's termination of Adkins was also an intentional act and, therefore, was not covered by the "occurrence" provisions of the Hospital/Trust insurance *Page 235 
agreement. The Hospital now appeals from that summary judgment.
The dispositive issue is whether Adkins's wrongful discharge claim is based upon intentional conduct and therefore falls outside the coverage of the Hospital/Trust insurance agreement.
The applicable "occurrence" provisions of the Hospital/Trust agreement are as follows:
 "The Trust will pay on behalf of members those sums which the member shall become legally obligated to pay as damages because of any claim or claims first made against the member during the report year period because of:
". . . .
 "AGREEMENT B: General Liability — Bodily injury or property damage caused by an occurrence which takes place subsequent to the retroactive date and prior to the end of the report year period, and
 "AGREEMENT C: Personal Injury liability caused by an occurrence which takes place subsequent to the retroactive date and prior to the end of the report year period;
 "and the Trust shall have the right and duty to defend any suit against a member seeking such damages, even if any of the allegations of the suit are groundless, false or fraudulent, and shall make such investigation and settlement of any claim or suit as it deems expedient."
Under Agreements B and C, an "occurrence" is defined as an "[a]ccident, including continuous or repeated exposure to conditions, or the happening of any of the offenses described in the definition of 'Personal Injury,' which results in personal injury or property damage neither expected norintended from the standpoint of the member." (Emphasis added.)
In Jackson I, the Court interpreted the provisions of the Hospital/Trust agreement and their application to the sexual discrimination claims:
 "In their complaints, Adkins and Webb allege that they were treated less favorably than their co-employees and were so treated because of their sex. To sustain this 'disparate treatment' cause of action, the plaintiffs must establish that their employer acted with a discriminatory intent. [Citations omitted.] Under the terms of its policy with the Trust, the Hospital has coverage only for injuries arising from its unintentional acts;
accordingly, the trial court properly determined that the Trust has no duty to defend the Hospital on the sexual discrimination claims."
619 So.2d at 1372 (emphasis added).
The word "intent" in an insurance policy provision indicates that the actor desires to cause the consequences of an act or believes that the consequences are likely to result from it. See 7A Appleman, Insurance Law and Practice, § 4492.02 (Berdal ed. 1979). Many courts have determined that an employer's termination of an employee is intentional and is not covered under "occurrence" provisions similar to the one found in the Hospital/Trust insurance agreement; see St. Paul Mercury Ins.Co. v. Ralee Engineering Co., 804 F.2d 520, 522 (9th Cir. 1986) (insurer not required to provide coverage for wrongful termination claim where policy covers only "something [the insured] didn't expect or intend to happen"); E-Z Loader BoatTrailers, Inc. v. Travelers Indemnity Co., 106 Wn.2d 901,906, 726 P.2d 439, 442 (1986) ("[t]ermination of an employee is not unintentional and does not result from a chance occurrence"); Jespersen v. United States Fidelity Guar. Co.,131 N.H. 257, 551 A.2d 530 (1988); Daly Ditches Irr. v.National Sur. Corp., 234 Mont. 537, 764 P.2d 1276 (1988);Smithway Motor Xpress v. Liberty Mut. Ins. Co., 484 N.W.2d 192
(Iowa 1992).
After reviewing the record, we conclude that the trial court, on remand, properly entered the summary judgment in favor of the Trust. Adkins's wrongful termination claim was based upon an action alleged to be intentional on the part of the Hospital; that is, Adkins alleged that the Hospital intentionally discharged her because of her filing of a workers' compensation claim. E-Z Loader Boat Trailers, Inc., supra. In her complaint, Adkins alleges that the Hospital took "intentional conduct in terminating the Plaintiff" and alleges that the Hospital "intentionally *Page 236 
terminated the Plaintiff, constructively or otherwise, solely because Plaintiff claimed rights under the Workmen's Compensation Law of the State of Alabama." To prove her allegations, Adkins would necessarily be required to show that the Hospital intentionally terminated her employment because she filed a workers' compensation claim. In accordance with this Court's holding in Jackson I, we hold that the Trust's insurance agreement with the Hospital imposes on the Trust no duty to provide coverage for Adkins's wrongful termination claim.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
MADDOX, SHORES and STEAGALL, JJ., concur.
HOUSTON, J., concurs specially.